IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

KENNETH R. DILLARD,              :

    Plaintiff,                :

vs.                              :     CA 11-0276-C

MICHAEL J. ASTRUE,               :
Commissioner of Social Security,
                                 :
    Defendant.

# MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his claims for disability insurance benefits and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 17 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings."); *see also* Doc. 18 (endorsed order of reference).) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of the parties at the December 12, 2011 hearing before the Magistrate Judge, it is determined that the

1

Commissioner's decision denying plaintiff benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

Plaintiff alleges disability due to spondylolisthesis of the lumbar spine, degenerative joint disease of the right hip and knees bilaterally, and pain. The Administrative Law Judge (ALJ) made the following relevant findings:

> **1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2000.**
>
> **2. The claimant has not engaged in substantial gainful activity since June 16, 1995, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).**
>
> . . .
>
> **3. The claimant has the following severe impairments: spondylolisthesis of the lumbar spine and degenerative joint disease of the right hip and of the knees bilaterally (20 CFR 404.1520(c) and 416.920(c)).**
>
> . . .
>
> **4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**
>
> . . .
>
> **5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b).**

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 17 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

**Specifically, he can stand and walk no more than 30 minutes at a time. He cannot climb ladders, scaffolds or ropes. He cannot work around unprotected heights. The claimant can no more than rarely climb stairs and ramps. He can no more than occasionally bend, stoop, kneel, crouch and crawl.**

In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. I have also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, I must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, I must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must make a finding on the credibility of the statements based on a consideration of the entire case record.

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

. . .

At the hearing, the claimant testified that he feels pain from the bottom of his feet, up his legs, in his calves, in the back and front of both knees, in both hips, his back, his neck and his arms. The claimant testified that he is able to climb stairs but the effort "takes everything out of him." The

claimant testified he cannot stand or walk for thirty minutes. He estimated the maximum amount of time he could stand or walk is five minutes at a time. The claimant twice stated that he can barely walk to the bathroom.

. . .

[Ms. Parker] reported the claimant performed light housework and yard work. However, she stated he had to rest for 2 minutes after every 10 minutes of activity. She noted he needed assistance soaking dishes, bringing clothes to the washing machine and removing clothes from the dryer. She noted the claimant spent most of his time sitting and listening to music or watching television. (Exhibit 7E).

Both the claimant's and Ms. Parker's descriptions of his functional limitations in 2008 are contradicted by a physical examination performed by Ahmad Haidar, M.D. on May 14, 2008, which undermines their credibility. Dr. Haidar reported the claimant's lower extremities had a normal range of motion at the hips, knees and ankles. He had normal dorsi- and plantar flexion. The claimant could not walk on tiptoes and heels but was able to squat and bend forward with fingertips approximately fourteen inches from the floor. While he walked with a limp on the right leg, Dr. Haidar stated "no assistive devices are used or required for ambulation." The claimant's vision was 20/50 in both eyes, but Dr. Haidar noted no correction was used. (Exhibit 1F).

. . .

The claimant's medical records as well as clinical and laboratory findings support and verify his complaints of back pain.[2]

. . .

However, despite the clinical and radiological deficits noted above, the medical record contains a considerable number of findings upon clinical examination that I find inconsistent with a claim of an inability to perform any sustained work activity.

. . .

---

[2] Presumably, the ALJ meant to indicate that the clinical and laboratory findings support and verify claimant's complaints of knee pain as well since numerous relevant findings set forth by the ALJ relate solely to plaintiff's knees. (*See* Tr. 22.)

4

The claimant has not provided convincing details regarding factors which precipitate the allegedly disabling symptoms, claiming that the symptoms are present constantly or all of the time. At the hearing, the claimant was unable to estimate how long his pain has been at its current level. He testified that his pain increases every day. He testified that no particular activity aggravates his condition and that his pain is always "debilitating." When asked what circumstances, if any, increased his pain, the claimant replied "don't know."

The record reflects significant gaps in the claimant's history of treatment. There is no evidence of complaints of or treatment for any symptoms between 1995 and 2000. The record reflects no actual treatment between 2000 and 2008.

. . .

While the record reflects the claimant has received regular care since moving to Alabama, the claimant's treatment records do not suggest the presence of impairments which are more limiting than found in this decision. The claimant testified he has received treatment through the Mobile County Health Department. Records from Dr. Roberts reflect the claimant has received treatment approximately once a month since October 2009. Office visit notes reflect the claimant reported a pain level of 0 of 10 three times and a pain level of 3 twice during his first five office visits between October 2009 and March 2010. On April 9, 2010, his pain level was reported to be a 5, but on May 13, 2010, it was noted to be a 0. (Exhibit 8F). On June 4, 2010, the claimant's pain level was again reported to be 5. (Exhibit 9F). In fact eight days prior to the hearing, the claimant reported no localized joint pain, which contrasts with his hearing testimony describing chronic, debilitating pain.

. . .

Despite the complaints of allegedly disabling symptoms, there have been significant periods of time since the alleged onset date during which the claimant has not taken any prescription medications for those symptoms.

. . .

Although the claimant has alleged various side effects from the use of medications, the medical records, such as office treatment notes, do not corroborate those allegations. The claimant reported that Lortab causes

5

dizziness and Flexeril causes drowsiness. (Exhibits 3E and 13E). The claimant currently takes Lortab, Lyrica and Celebrex. However, office visit notes do not reflect any complaints of medication side effects. (Exhibits 8F and 9F).

The claimant acknowledged participating in unlawful activities, which undermines his credibility. At the hearing, the claimant testified that he had used other people's prescription medication.

. . .

As mentioned earlier, the record reflects work activity after the alleged onset date. Although that work activity did not constitute disqualifying substantial gainful activity, it does indicate that the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported. At the hearing, the claimant testified that he was last able to hold a regular job in 1995. However, he described working part time installing carpet for approximately twelve years after his alleged disability onset date. Despite his reported back, hip and knee pain, the claimant testified he spent his working hours crawling on his hands and knees. He testified that he could not perform the work full time but was able to work part time because he was not on his feet "much" and had someone to perform the heavy lifting. The claimant has consistently reported spending the majority of his time crawling. (Exhibit 2E and 4E). However, the claimant's testimony that he did not perform any heavy lifting is inconsistent with his previous descriptions of his work as a floor covering installer. In an unsigned work history report, the claimant reported the heaviest weight he lifted was 50 pounds. (Exhibit 4E). In his initial "Disability Report-Adult," the claimant reported the heaviest weight he lifted was 100 pounds or more. He further described the objects he lifted and carried as carpet, linoleum, tile, wood planks, tools, furniture, and 5 gallon buckets of glue. He reported carrying objects 10 to 20 feet. (Exhibit 2E).

On June 18, 2008, a state agency medical consultant, Thomas Jeffcoat, M.D., opined the claimant was capable of the medium range of work. (Exhibit 2F). At the time Dr. Jeffcoat rendered his opinion the only medical evidence of record was Dr. Haidar's physical examination and two X-rays. (Exhibit 1F). Dr. Jeffcoat did not have the opportunity to speak with or examine the claimant himself. In addition, new evidence has been admitted into the record since Dr. Jeffcoat rendered his opinion, which obviously diminishes the value of that opinion. Therefore, I have accorded the opinion of Dr. Jeffcoat little weight.

I find the claimant's back, hip and knee pain limits him to lifting and carrying no more than 10 pounds frequently or 20 pounds at a time. His pain precludes him from standing and walking longer than 30 minutes at a time or climbing ladders, scaffolds or ropes. His pain and potential medication side effects preclude him from working around unprotected heights. The claimant's pain limits him to no more than rarely climbing stairs and ramps and no more than occasionally bending, stooping, kneeling, crouching and crawl[ing].

**6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**

. . .

**7.     The claimant was born on December 21, 1963 and was 31 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).**

**8.     The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).**

**9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).**

In determining whether a successful adjustment to other work can be made, I must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of

either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.18. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as surveillance system monitor (DOT No. 379.367-010) a sedentary unskilled occupation with more than 500,000 jobs in the national economy; toll collector (DOT No. 211.462-038) a light unskilled job with more than 550,000 jobs in the national economy; and parking lot attendant (DOT No. 915.473-010) a light unskilled job with more than 550,000 jobs in the national economy. Mr. Freeman testified all three jobs have a specific vocational preparation of 2.

Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**11.    The claimant has not been under a disability, as defined in the Social Security Act, from June 16, 1995 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

(Tr. 18, 19, 20, 20-21, 21, 21-22, 22, 23, 23-24, 24, 25 & 26-27.) The Appeals Council affirmed the ALJ's decision (Tr. 5-7) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

In all Social Security cases, the claimant bears the burden of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Once the claimant meets this burden, as here, it becomes the Commissioner's burden to prove that the claimant is capable, given his age, education and work history, of engaging in another kind of substantial gainful employment which exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that, within the framework of the grids, he can perform those light and sedentary jobs identified by the vocational expert, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view

9

the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[3]

In this case, the plaintiff contends that the ALJ erred in failing to order a consultative orthopedic examination to determine his maximum RFC in light of the fact he was unrepresented at the hearing and given the severe impairments found to exist. (*See* Doc. 14.)

It is clear in this circuit that the Commissioner of Social Security must develop "a full and fair record regarding the vocational opportunities available to a claimant." *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989) (citation omitted).[4] The Commissioner must articulate specific jobs that the claimant can perform given his age, education and work history, if any, "and this finding must be supported by substantial evidence, not mere intuition or conjecture." *See id.* (citation omitted). Stated differently, the burden is on the Commissioner at the fifth step of the sequential evaluation process to establish capacity to perform other work and thereby to establish the claimant's residual functional capacity. *See Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

This Court has held on numerous occasions that the Commissioner's fifth-step burden cannot be met by a lack of evidence or, where available, by the residual

---

[3] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

[4] The ALJ's duty to develop a full and fair record "rises to the level of a special duty when the claimant is unrepresented." *Vesy v. Astrue*, 353 Fed.Appx. 219, 224 (11th Cir. Nov. 17, 2009).

functional capacity assessment of a non-examining, reviewing physician;[5] instead, this fifth-step burden must be supported by the residual functional capacity (and pain) assessment of a treating or examining physician. *See, e.g., Cosey v. Astrue*, 2008 WL 2561585, *3 (S.D. Ala. June 25, 2008). Such an assessment particularly is warranted where, as here, the ALJ has a heightened duty to develop a full and fair record of an unrepresented claimant and has rightly rejected the only RFC assessment in the record.[6] While the ALJ admittedly has the responsibility of determining a claimant's RFC, there must be substantial support in the record for that determination and it has always been the view of this Court, and will continue to be the view of this Court, that substantial evidence in support of such RFC determination necessarily must include an RFC assessment by a treating or examining physician. Without such evidence, all this Court perceives is mere conjecture and intuition by the ALJ regarding what plaintiff's impairments equate to in terms of his ability to perform/meet the physical requirements of work, "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching)[.]" *See, e.g.,* 20 C.F.R. § 404.1545(b) (2011).

---

[5] The opinion of a non-examining, reviewing physician "is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision." *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990). Perhaps partially in recognition of this Court's stance and the Eleventh Circuit's standard, the ALJ accorded little weight to the June 18, 2008 physical residual functional capacity assessment completed by non-examiner Dr. Thomas Jeffcoat. (Tr. 25; *compare id. with* Tr. 166-173.)

[6] As noted by the ALJ, the RFC assessment of the non-examiner, Dr. Jeffcoat, was stale. (*See* Tr. 25 ("[N]ew evidence has been admitted into the record since Dr. Jeffcoat rendered his opinion, which obviously diminishes the value of that opinion.").)

In light of the foregoing, plaintiff's counsel quite rightfully argues that the ALJ should have ordered an additional consultative orthopedic examination to determine Dillard's maximum residual functional capacity. After all, the ALJ determined that the RFC assessment in the record, from a non-examining physician, was entitled to little weight because new evidence submitted thereafter diminished the value of that assessment (Tr. 25) and this "new evidence" did not include an RFC assessment from the treating source but did include evidence that plaintiff was being treated for chronic knee and back pain (*see* Tr. 196-223).[7] Indeed, Dr. John Roberts consistently prescribed Lortab 7.5 for alleviation of plaintiff's chronic pain. According to the Physician's Desk Reference, not only is Lortab indicated for the relief of moderate to moderately severe pain but, as well, a common adverse reaction to Lortab is dizziness, *see* PDR, at 2567 (56th ed. 1996), which lends support to plaintiff's report that same makes him dizzy (Tr. 96), and suggests the ALJ should have made further inquiry into the effects of plaintiff's medications instead of rejecting same out-of-hand, *cf. Vesy, supra,* 353 Fed.Appx. at 225.

For the foregoing reasons, this cause is due to be reversed and remanded for further consideration not inconsistent with this decision.

---

[7] In other words, the evidence in the record was not sufficient to allow for an informed decision regarding plaintiff's RFC. *See Ingram v. Commissioner of Social Security Administration,* 496 F.3d 1253, 1259 (11th Cir. 2007) ("The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision.").

## **CONCLUSION**

It is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 21st day of December, 2011.

        s/WILLIAM E. CASSADY
        **UNITED STATES MAGISTRATE JUDGE**